381 So.2d 1043 (1980)
WILLIAM W. BOND, JR. & ASSOCIATES, INC.
v.
LAKE O'THE HILLS AINTENANCE Association.
No. 51673.
Supreme Court of Mississippi.
March 26, 1980.
Austin & Branan, D. Pace Branan, Hernando, for appellant.
Joel P. Walker, Jr., Hernando, for appellee.
Before SMITH, P.J., and SUGG and BOWLING, JJ.
SUGG, Justice, for the Court:
Lake O'The Hills Maintenance Association filed suit in the Chancery Court of DeSoto County to enforce a lien against seven lots owned by the defendant, William W. Bond, Jr. & Associates, Inc., a Tennessee corporation. Defendant has appealed from the decree ordering the sale of the property to satisfy a lien on the lots owned by defendant.
In 1965, defendant purchased seven lots from Walkem Development Company of Mississippi, Inc. Defendant's deed recited that the lots were a part of the Lake O'The Hills Subdivision and subject to the restrictive covenants of the subdivision and to certain covenants, limitations, and restrictions which were to run with the land. The deed then provided that each owner was to have a membership in the Lake O'The Hills Maintenance Association, a non-profit corporation, created for the purpose of maintaining the lake, dam site, drives and other common areas. Each member was subject to an annual assessment by the Association for the maintenance of the dam, dam site, lake and other common areas in the subdivision of which the property was a part. The deed provided that any unpaid annual assessment *1044 would constitute a lien on the property collectible by an action at law or by a proceeding in equity.
Complainant filed its suit on May 27, 1976, and alleged that defendant failed and refused to pay dues as follows:

 Lot 378 - Dues for years 1974,
 1975 and 1976 at $25.00
 per year .................. $ 75.00
 Penalty ................... 32.00
 Interest .................. 4.50
 _______
 Total ..................... $111.50

A similar allegation was made for each of the six remaining lots owned by defendant. The parties stipulated that defendant paid the annual assessment on each lot for the years 1966 through 1973, refused to pay the assessments for the years 1974, 1975 and 1976 and the assessment, interest, and penalty as set out in the bill of complaint was computed correctly according to the by-laws of the Association. The parties also stipulated that the annual assessment from 1963 until 1967 was $15.00 annually on each lot, and increased to $25.00 on each lot in 1967.
The chancellor held that the annual assessment for the stated purposes was a covenant running with the land. We affirm the chancellor on the authority of Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418, 68 A.L.R.2d 1013 (1958), where we held that a covenant imposing a burden will run with the land as readily as one conferring a benefit.
In the first and fourth assignments of error, defendant contends that complainant is not entitled to recover because of the statute of frauds. Section 15-3-1 Mississippi Code Annotated (1972). Defendant's argument of error is twofold. First, defendant asserts that it has not signed a writing binding itself to pay the annual assessments, and second, the amount of the annual assessment for maintenance is not set forth in the deed.
When defendant purchased the lots the deed under which it obtained title provided that defendant was required to pay an annual assessment to the Association which was a covenant running with the land. Defendant accepted the conveyance subject to the protective covenants on the recorded plat of the subdivision and is thereby bound by the covenants, limitations, and restrictions therein. Defendant may not claim the benefit conferred upon it by the deed and renounce the covenant running with the land under the guise that the statute of frauds protects it because it has not signed a writing agreeing to pay the annual assessments. We held in Mendrop v. Harrell, supra, that covenants running with the land are binding on subsequent purchasers, and if binding on the subsequent purchasers, certainly such covenants are binding on the original purchaser. We therefore conclude that the statute of frauds has no application to a covenant running with the land even though the covenant imposes a burden on the land.
In its second argument under these two assignments of error, defendant seeks to invoke the statute of frauds on the ground that the deed does not fix the amount of the annual assessments nor the date when the payment is due. The deed provides in section 3 that, "The property herein conveyed is subject to an assessment by the Lake O'The Hills Maintenance Association of $ ____ on an annual basis, for its fiscal year ending March 31, 19__, and thereafter for the same amount annually until changed by a majority of the total votes eligible to be cast by the members of the Association ..."
The deed also provides that the assessment shall be due and payable as the board of directors shall determine. The by-laws referred to in the deed were made a part of the record by stipulation and provide for meetings, a board of directors, officers, defines the duties of the officers of the Association, and provides for dues and assessments against the lots in such amounts as the members may assess from time to time by a majority of the total votes eligible to be cast.
In Mendrop v. Harrell, supra, we held that a lien should be placed upon two lots for paving costs even though the amount of the cost of paving was not inserted *1045 in the deed. In this case, it is clearly evident from the deed that the common property of the Association in the subdivision was to be maintained by assessment of annual dues. We hold that the failure to insert the amount and due date of the annual assessments in the deed did not excuse defendant from paying the amount assessed, and the statute of frauds has no application.
In its third assignment of error defendant stated: "It is impossible for the Appellants to determine whether in fact the lots are to be sold for only the back assessments, or whether penalty and interest is charged." Defendant also argued under this assignment of error that the final decree is incomplete because it is silent as to the time and manner of sale of the property and does not fix a date for confirmation of the sale.
The decree recites the following:
IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that a lien is hereby placed on Lots 378, 379, 380, 381, 382, 383, and 384 of Section A, Lake of the Hills Subdivision as recorded on Plat Book 2, Pages 29-33 in the Chancery Clerk's Office of DeSoto County, Mississippi located in Section 20, Township 3, Range 9 West.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the lots shall be sold and money received from the sale and applied for the satisfaction of the lien for the back annual assessments due up until the date of this decree.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all costs shall be assessed to the Defendant.
For the collection of all amounts and the accomplishment of all things ordered to be paid and done herein, let execution and all other appropriate process issue.
We agree with defendant in its first argument under this assignment of error that it is impossible to determine from the decree whether the court impressed a lien only for the amount of the assessment or whether penalty and interest were included in the decree. We further note that the suit was for annual assessments for three years but the decree provided for a lien for annual assessments up to the date of the decree which was December 18, 1978. The decree placed a lien on the seven lots for the annual assessments for the years 1977 and 1978, but the bill of complaint did not allege that the assessments for these years had not been paid and did not seek recovery for these years.
We must reverse because the decree in this case does not set forth with reasonable certainty the amount of the lien assessed against the property of the defendant. This is in accord with the statement of Justice Griffith in Mississippi Chancery Practice where he stated:
A reasonable certainty and a fair precision are elemental requirements entering into all the important parts of judicial procedure, and obviously the requirement is equally obligatory as to decrees. There must in all respects be a clear and unambiguous certainty in all the provisions of a decree so that every party thereto may know exactly what he is to do in obedience to it and that all may safely perform its terms as written; and particularly must this be true when the decree is framed to meet the exigencies of a complicated situation wherein misunderstanding might easily arise. It should be complete within itself,  containing no extraneous references, and leaving open no matter or description or designation out of which contention may arise as to the meaning. Nor should a final decree leave open any judicial question to be determined by others, whether those others be the parties or be the officers charged with the execution of the decree, and even as to matters solely affecting the execution, if their nature be such as is likely to eventuate in dispute, reservation for further directions should be made if impossible safely to do otherwise. (§ 625 at 714).
.....
Where a decree in chancery is rendered for the recovery of money it must be for a sum certain, based on evidence reasonably sufficient to show the sum due. The *1046 amount cannot be arrived at by, nor left to, mere conjecture, nor by recourse to anything extrinsic. And it must provide, in order to have execution, some person to whom the money is to be paid, and if necessary so to do the court will appoint the clerk or a master for that purpose. (§ 626 at 715).
.....
Where a sum is found due by a party which is made a charge on the property involved, the decree must adjudicate and declare the amount of the debt,  otherwise a greater amount of property might be sold than was necessary to pay the debt,  and the decree should fix a reasonable time within which the payment should be made in default of which the property will be ordered sold by a commissioner of the court; ... (§ 625 at 716).
We held in Dixie National Life Insurance Co. v. Allison, 372 So.2d 1081 (Miss. 1979) and in Norris v. Norris, 157 Miss. 457, 128 So. 342 (1930) that a decree in chancery must be characterized by a reasonable certainty in its terms, and this is particularly true in respect to those provisions which fix the rights and liabilities of the respective parties. The decree does not meet this test because the amount of the lien was not set forth therein.
Defendant's second argument under its third assignment of error that the decree is unenforceable because it failed to fix the time and terms of sale is without merit because section 11-5-93 Mississippi Code Annotated (1972) provides in part the following:
Every sale of real estate ordered by a decree of any court of chancery shall be made for cash, unless otherwise ordered by the court, and at such place and on such notice as may be directed in the decree; and if direction be not given, at such place and on such notice as is required in case of sales of land under execution at law ...
We reverse and remand with directions to the chancellor to determine the amount of the lien impressed on the property. This reversal is without prejudice to the complainant to amend and seek recovery for all annual assessments accrued and unpaid at the time of filing its amendment, if any.
Defendant argues in its second assignment of error that the provision in the by-laws of the association for a penalty of $1.00 per month to be charged to any lot owner for each month he is delinquent in payment of his annual assessment is usurious. We do not reach this question because, as heretofore noted, we are unable to determine whether the chancellor included the $1.00 per month penalty in the amount of the lien to be affixed on the property.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE and BOWLING, JJ., concur.
COFER, J., takes no part.